HOTTENSTEIN et al. (MOORE et al., Interveners) v. YORK ICE MACHINERY CORPORATION.

Civil Action No. 205. .

District Court, D. Delaware.

June 8, 1942.

John Schulman, Seymour Heilbron, and David Getz, all of New York City, and

William H. Foulk, of Wilmington, Del., for plaintiffs.

.Caleb R. Layton, III, of Wilmington, Del., and Richard J. Mackey, of New York City, for R. Thomas Moore, intervenor.

Herbert LeRoy Cohen, of Wilmington, Del., for Sidney Lewald, intervenor.

Harold B. Howard, of Wilmington, Del., for Joseph W. Jones, intervenor.

William S. Potter, of Wilmington, Del., for Janet Levy, intervenor.

Harold Duane, of Wilmington, Del., for Lola A. Sweet.

George S. Munson, of Philadelphia, Pa., and Robert H. Richards and Aaron Finger, both of Wilmington, Del., for defendant.

WATSON, District Judge.

This suit was brought to prevent the merger of the defendant with the York Corporation and for injunctive relief.

The defendant was organized under the laws of Delaware in 1927, and its outstanding stock consists of approximately 53,000 shares of preferred stock and 161,000 shares of common stock. In January of 1941 a plan was proposed to merge the defendant and its wholly owned inactive subsidiary, York Corporation. York Corporation was organized under the laws of Delaware in 1939 to pre-empt the name which it bears for the defendant, and had no other assets except the money paid into its treasury by the defendant for twenty shares of its stock. The plan of merger contemplates that each share of preferred stock of the defendant plus accumulated dividends will be converted into fifteen shares of the common stock of the resulting corporation and each share of common stock of the defendant will be converted into one share of the common stock of the resulting corporation. The outstanding stock of the York Corporation will be canceled. At the stockholders' meeting, held for the purpose of voting on the plan of merger, seventy-five and nine-tenths per cent. (75.9%) of the preferred stockholders voted in favor of the plan, and approximately seventy-five per cent. (75%) of the common stockholders voted in favor of the plan. Approximately twelve and one-half per cent. (12½%) of the preferred stockholders filed written objections to the plan.

There are two principal questions presented: First: Is the merger one which is authorized by the laws of Delaware?

And, second: Is the plan so unfair that its operation should be enjoined? The question as to whether the merger is legal is entirely controlled by Federal United Corporation v. Havender, Del.Sup. 11 A.2d 331.

The Havender case involved the merger of a parent corporation with a wholly-owned active subsidiary. The purpose of the merger, as recognized in the opinion of the Supreme Court, as well as in those of two learned chancellors of the court below, 2 A.2d 143; 6 A.2d 618, was the recapitalization of the parent corporation and the extinguishment of accumulated dividends on preference stock. The Supreme Court reversed the court below and sustained the validity of the merger.

It is conceded by the plaintiffs that all of the formal requirements of the Delaware laws relating to mergers have been satisfied, and it is not disputed that the two corporations here involved are such as under the provisions of Section 59 of the Delaware General Corporation Law, Code 1935, § 2091, are authorized to enter into merger agreements.

The plaintiffs contend that the merger is not bona fide and "is a sham, subterfuge, and device employed as a vehicle to deprive the Preferred Stockholders of their preferential rights and accumulated dividends." Or, to phrase their contention in the language of the Havender case, "In their view, the corporate proceeding complained of, while styled a merger, was no more than an unauthorized attempt at a recapitalization of the defendant corporation, ineffective, as against objection, to extinguish accumulated dividends on preference stock within the rule announced by this court in Keller v. Wilson & Co., Inc., Del.Sup. 190 A. 115", 11 A.2d at page 338.

The Keller case, referred to, involved an attempt to extinguish accumulated dividends by proceedings to amend the corporate charter under Section 26 of the Delaware General Corporation Law, Code 1935, § 2058. The Supreme Court ruled that the accumulated dividends could not be divested in such manner. The Supreme Court declined to extend the rule of the Keller case to proceedings for merger of corporations. Cf. Shanik v. White Sewing Machine Corporation, Del.Sup., 19 A.2d 831.

How then is this case to be distinguished from the Havender case? It has been pointed out that here the subsidiary has substantially no assets. In the Havender case the defendant was the equitable owner of all that it received from the subsidiary, and, consequently, from the point of view of equity it received nothing of value as a result of the mergers. Here, the subsidiary has substantially no assets, but the change in asset value of the parent corporation is the same as in the Havender case—no change at all. I cannot conceive of a distinction lending itself to the consideration of a court of equity which is founded upon the difference between giving to a corporation that which equity regards as belonging to the corporation and giving the corporation nothing at all. As was pointed out by the late chancellor Wolcott in 2 A.2d 143, 146: "The defendant as sole owner of the subsidiary received nothing. * * * It was a case of the defendant simply taking over the assets of its own subsidiary and becoming the immediate instead of the derivative owner thereof."

If the contention of the plaintiffs be considered of substance, the further question is immediately presented as to the value of the assets of the subsidiary which must be present in order to have a valid merger. York Corporation has several hundred dollars on deposit and a corporate name of considerable value to the Defendant, and, therefore, it cannot be said that it has no assets. If the value of these assets is insufficient, how much greater should the value of its assets be in order that it may enter into a valid merger agreement? The question itself demonstrates, in my opinion, the error of this reasoning. The attack upon this merger is not based upon the small value of the subsidiary's assets, but upon the fact that the immediate purpose of the merger is to effect a recapitalization of the defendant. This purpose, it must be considered, is one incidental to the purposes which mergers are generally believed to be designed to serve. The absence of substantial assets merely acts as a lens to focus attention upon the absence of purposes other than recapitalization:

Reference is also made by plaintiffs to the fact that York Corporation is not a going concern. I can see no significance in this fact alone. I have found no intimation in the authorities that a valid merger requires that the merging corporations must be going concerns, nor does such a requirement appear reasonable or desirable. It is only when this fact is found in conjunction with assets of comparatively slight value that it has meaning, and then it only aids

in making conspicuous the sole purpose of the merger.

All questions concerning the validity of the proceedings here sought to be enjoined have been set at rest completely by the decision in the Havender case, and that decision governs. The merger here is one which is authorized by the laws of Delaware.

The second principal question is the alleged unfairness of the terms of the merger. In considering this question it must be noted that the burden of proof here is upon the plaintiffs, and in that respect is quite different from that involved in reorganizations under the Bankruptcy Act. There the Court is required to find that the plan under consideration is fair, equitable, and feasible, and no plan may be adopted until it has been found so to be by the judge in the exercise of an informed discretion. In actions to enjoin the operation of a plan of merger, under the law of Delaware, the Court is not granted such broad power, and the Court may afford relief only if it finds that the plan is so unfair as to shock the conscience of the court and to amount to fraud. MacFarlane v. North American Cement Corporation, 16 Del.Ch. 172, 157 A. 396.

The question of fairness here involved relates only to the distribution of the stock of the resulting corporation as between the preferred and common stockholders of the defendant. The value of the preferred stock, if the common stock has any value, is approximately $10,000,000, including accumulated dividends. Therefore, if the value of the interest which the preferred stockholders receive under the plan of merger is as much or more than $10,000,000, it certainly is not so grossly unfair as to shock the conscience of the court. And, insofar as the interest given to the preferred stockholders has less than that value, the plan approaches the point at which it must be deemed so unfair that the merger should be enjoined.

It is in regard to the value of the interest given to the perferred stockholders that the evidence submitted fails to support the contention of the plaintiffs. The evidence submitted relates to two factors which must be considered in arriving at the value of the common stock of the resulting corporation: First, as to the value of the assets of the defendant; and, second, as to the probable future earnings of the defendant. Two values were placed upon the assets of the defendant. The first value is shown in the balance sheet of the defendant for November 30, 1940, which was submitted to the stockholders with the plan of merger. The value there shown denies the existence of an equity in favor of the common stock. However, the defendant offered testimony which satisfies the Court that the value placed upon the fixed assets of the defendant, as shown in the balance sheet, is substantially less than the actual value thereof, and that the value of these assets was arbitrarily written down at a time long before the plan of merger was contemplated. The second value placed upon the assets of the defendant differed from the first in that the fixed assets were valued at their estimated reconstruction cost new less depreciation. On that basis, it not only appears that a substantial equity exists in favor of the common stockholders of the defendant, but that the plan of merger is apparently unfair to the common stockholders. It was admitted by the defendant that this value exceeds the fair value of the assets of the defendant. There was no evidence submitted which purported to be an estimate of the actual fair value of the fixed assets of the defendant, and the difference between the two values fixed is approximately $7,000,000. If the lower figure is increased by half of this difference, the common stock of the resulting corporation given to the preferred stockholders has a value in excess of $10,000,000.

The evidence with regard to the earnings of the defendant is similarly inconclusive. Neither side offered testimony as to the probable future earnings of the company. The evidence received dealt only with the past earnings of the company up to September 30, 1941. While the past earnings of a corporation are ordinarily of considerable value in estimating probable future earnings, in the present case they are insufficient to form the basis of anything but the wildest guess as to the probable future earnings. The amount of income available for stock dividends has varied as much as a million dollars in the ten years prior to September 30, 1940, and over that period the corporation suffered an operating loss of approximately $150,000. On the other hand, the evidence also reveals that the defendant had an income subject to sinking fund arrearages, available for dividends in the year 1941 of between $800,000 and $1,200,000. Under the plan of merger, the preferred stockholders receive eighty-three and two-tenths per cent.

(83.2%) of the stock of the resulting corporation. Therefore, if the lesser figure for 1941 were considered as an approximation of the probable future earnings of the company, there would be available for dividends on eighty-three and two-tenths per cent. (83.2%) of the stock the sum of $665,600, or six per cent. on approximately $11,000,000.00. Thus, again, the evidence received fails to establish that the plan of merger is unfair.

In the foregoing discussion, I have not considered the value of the preferential rights which, under the plan of merger, are to be surrendered by the preferred stockholders. The reasons for this omission are that no evidence or argument in behalf of the plaintiffs has been directed to the value of these preferential rights and because the transfer of voting control from the present common stockholders to the preferred stockholders may be considered as compensating the preferred stockholders for the surrender of their preferential rights, if these rights are of any value.

The plaintiffs have advanced another reason in support of their contention that the plan is grossly unfair to them. The evidence shows that a majority of the common stock is owned by two interests referred to as the "Glatfelter" and "Shipley" interests, and that these interests control the Defendant corporation. These interests also own approximately seven and one-half per cent. (7½%) of the preferred stock of the defendant. The plaintiffs have contended throughout that the Glatfelter and Shipley interests designed the merger for the purpose of giving value to their common stock at the expense of the preferred stockholders. There is, however, no evidence that these interests did in fact act in concert to give effect to their combined stockholdings. Nor does the evidence show that these interests acquire any benefit under the plan other than that which they receive as stockholders. And there is no evidence to show that they have acquired stock in contemplation of the merger. Consequently, assuming that their interests did act in concert, fraud, if any, must lie in the allocation of the stock of the resulting corporation by the directors. As has been shown, the Court is unable to find evidence from which it can be determined that the division of stock of the resulting corporation between the present preferred and common stockholders is in fact unfair. Nor does it appear that the directors, in proposing the plan of merger, were motivated by a desire to benefit the common stockholders at the expense of the preferred stockholders.

The evidence shows that the directors were concerned with refinancing the defendant and obtaining a capital structure which would permit this refinancing on favorable terms. The defendant's experts testified that the accumulated dividends on preferred stock would interfere with the refinancing of the defendant and it is apparent that this is true. The evidence also shows that the directors had been advised and believed that a recapitalization was desirable from the point of view of the financial position of the defendant, and that the best interests of the stockholders required such action. I am convinced that the plan of merger was proposed by the directors in good faith and without intention to benefit one class of stockholders at the expense of the other. One of the directors opposed the plan of merger, but his testimony shows that he did not oppose it upon the ground that the plan was unfair but only upon the ground that some preferred stockholders would be required to surrender their stock involuntarily. Therefore, little, if any, importance can be attached to the fact of the opposition of this director insofar as the fairness of the plan is concerned.

The evidence also shows that the directors had consulted experts and had received confirmation of their opinion that the division of the stock of the resulting corporation between the present preferred and common stockholders was fair, and I am convinced that they did in fact honestly endeavor to preserve to each class of stockholders its proportionate interest in the assets of the defendant.

■ A careful examination of all the evidence convinces me that it is insufficient to support a finding that the plan is unfair to the preferred stockholders.

The complaint will be dismissed.