182 A.2d 22 (1962)
Martin HARITON, Plaintiff,
v.
ARCO ELECTRONICS, INC., a Delaware corporation, Defendant.
Court of Chancery of Delaware, New Castle.
June 13, 1962.
*23 Irving Morris and Joseph A. Rosenthal, of Cohen & Morris, Wilmington, for plaintiff.
Samuel S. Arsht and Walter K. Stapleton, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant.
SHORT, Vice Chancellor.
Plaintiff is a stockholder of defendant Arco Electronics, Inc., a Delaware corporation. The complaint challenges the validity of the purchase by Loral Electronics Corporation, a New York corporation, of all the assets of Arco. Two causes of action are asserted, namely (1) that the transaction is unfair to Arco stockholders, and (2) that the transaction constituted a de facto merger and is unlawful since the merger provisions of the Delaware law were not complied with.
Defendant has moved to dismiss the complaint and for summary judgment on the ground that the transaction was fair to Arco stockholders and was, in fact, one of purchase and sale and not a merger.
Plaintiff now concedes that he is unable to sustain the charge of unfairness. The only issue before the court, therefore, is whether the transaction was by its nature a de facto merger with a consequent right of appraisal in plaintiff.
Prior to the transaction of which plaintiff complains Arco was principally engaged in the business of the wholesale distribution of components or parts for electronics and electrical equipment. It had outstanding 486,500 shares of Class A common stock and 362,500 shares of Class B common stock. The rights of the holders of the Class A and Class B common stock differed only as to preferences in dividends. Arco's balance sheet as of September 30, 1961 shows total assets of $3,013,642. Its net income for the preceding year was $273,466.
Loral was engaged, primarily, in the research, development and production of electronic equipment. Its balance sheet shows total assets of $16,453,479. Its net income for the year ending March 31, 1961 was $1,301,618.
In the summer of 1961 Arco commenced negotiations with Loral with a view to the purchase by Loral of all of the assets of Arco in exchange for shares of Loral common stock. I think it fair to say that the record establishes that the negotiations which ultimately led to the transaction involved were conducted by the representatives of the two corporations at arms length. There is no suggestion that any representative of Arco had any interest whatever in Loral, or vice versa. In any event, Arco rejected two offers made by Loral of a purchase price based upon certain ratios of Loral shares for Arco shares. Finally, on October 11, 1961, Loral offered a purchase price based on the ratio of one share of Loral common stock for three shares of Arco common stock. This offer was accepted by the representatives of Arco on October 24, 1961 and an agreement for the purchase was entered into between Loral and Arco on October 27, 1961. This agreement provides, among other things, as follows:
1. Arco will convey and transfer to Loral all of its assets and property of every kind, tangible and intangible; and will grant to Loral the use of its name and slogans.
2. Loral will assume and pay all of Arco's debts and liabilities.
3. Loral will issue to Arco 283,000 shares of its common stock.
4. Upon the closing of the transaction Arco will dissolve and distribute to its shareholders, pro rata, the shares of the common stock of Loral.
5. Arco will call a meeting of its stockholders to be held December 21, 1961 to authorize and approve the conveyance and delivery of all the assets of Arco to Loral.
6. After the closing date Arco will not engage in any business or activity except *24 as may be required to complete the liquidation and dissolution of Arco.
Pursuant to its undertaking in the agreement for purchase and sale Arco caused a special meeting of its stockholders to be called for December 27, 1961. The notice of such meeting set forth three specific purposes therefor: (1) to vote upon a proposal to ratify the agreement of purchase and sale, a copy of which was attached to the notice; (2) to vote upon a proposal to change the name of the corporation; and (3) if Proposals (1) and (2) should be adopted, to vote upon a proposal to liquidate and dissolve the corporation and to distribute the Loral shares to Arco shareholders. Proxies for this special meeting were not solicited. At the meeting 652,050 shares were voted in favor of the sale and none against. The proposals to change the name of the corporation and to dissolve it and distribute the Loral stock were also approved. The transaction was thereafter consummated.
Plaintiff contends that the transaction, though in form a sale of assets of Arco, is in substance and effect a merger, and that it is unlawful because the merger statute has not been complied with, thereby depriving plaintiff of his right of appraisal.
Defendant contends that since all the formalities of a sale of assets pursuant to 8 Del.C. § 271 have been complied with the transaction is in fact a sale of assets and not a merger. In this connection it is to be noted that plaintiffs nowhere allege or claim that defendant has not complied to the letter with the provisions of said section.
The question here presented is one which has not been heretofore passed upon by any court in this state. In Heilbrunn v. Sun Chemical Corporation, Del., 150 A.2d 755, the Supreme Court was called upon to determine whether or not a stockholder of the purchasing corporation could, in circumstances like those here presented, obtain relief on the theory of a de facto merger. The court held that relief was not available to such a stockholder. It expressly observed that the question here presented was not before the court for determination. It pointed out also that while Delaware does not grant appraisal rights to a stockholder dissenting from a sale, citing Argenbright v. Phoenix Finance Co., 21 Del.Ch. 288, 187 A. 124, and Finch v. Warrior Cement Corp., 16 Del.Ch. 44, 141 A. 54, those cases are distinguishable from the facts here presented, "because dissolution of the seller and distribution of the stock of the purchaser were not required as a part of the sale in either case." In speaking of the form of the transaction the Supreme Court observes:
"The argument that the result of this transaction is substantially the same as the result that would have followed a merger may be readily accepted. As plaintiffs correctly say, the Ansbacher enterprise [seller] is continued in altered form as a part of Sun [purchaser]. This is ordinarily a typical characteristic of a merger. Sterling v. Mayflower Hotel Corp., 33 Del. 293, 303, 93 A.2d 107, 38 A.L.R.2d 425. Moreover the plan of reorganization requires the dissolution of Ansbacher and the distribution to its stockholders of the Sun stock received by it for the assets. As a part of the plan, the Ansbacher stockholders are compelled to receive Sun stock. From the viewpoint of Ansbacher, the result is the same as if Ansbacher had formally merged into Sun.
"This result is made possible, of course, by the overlapping scope of the merger statute and the statute authorizing the sale of all the corporate assets. This possibility of overlapping was noticed in our opinion in the Mayflower case.
"There is nothing new about such a result. For many years drafters of plans of corporate reorganization have increasingly resorted to the use of the sale-of-assets method in preference to *25 the method by merger. Historically at least, there were reasons for this quite apart from the avoidance of the appraisal right given to stockholders dissenting from a merger."
Though it is said in the Heilbrunn case that the doctrine of de facto merger has been recognized in Delaware, it is to be noted that in each of the cases cited as recognizing the doctrine, namely, Drug, Inc. v. Hunt, 35 Del. 339, 168 A. 87 and Finch v. Warrior Cement Corp., supra, there was a failure to comply with the statute governing sale of assets. In both cases the sales agreement required delivery of the shares of the purchasing corporation to be made directly to the shareholders of the selling corporation. It was, of course, held in each case that no consideration passed to the selling corporation and that therefore the transaction did not constitute a sale of the assets of the selling corporation to the purchasing corporation. No such failure to comply with the provisions of the sale of assets statute is present in this case. On the contrary, as heretofore observed there was a literal compliance with the terms of the statute by this defendant.
The doctrine of de facto merger in comparable circumstances has been recognized and applied by the Pennsylvania courts, both state and federal. Lauman v. Lebanon Valley Railroad Co., 30 Pa. 42; Marks v. Autocar Co., D.C., 153 F.Supp. 768; Farris v. Glen Alden Corporation, 393 Pa. 427, 143 A.2d 25. The two cases last cited are founded upon the holding in the case first cited which was decided on common law principles. The basis for the holding in the Lauman case is not at all clear. The transaction involved was a merger of two railroads and the special Pennsylvania statute authorizing the merger made no provision for a dissenting shareholder to be allowed the fair value of his shares. The theory of the court's holding was to the effect that a shareholder could not be compelled to exchange his shares for stock in a new corporation since to do so would be to deprive him of his property without due process of law. The later Pennsylvania cases adopt the de facto merger approach and stress the requirement of dissolution and distribution of the purchaser's stock among the seller's shareholders. The Farris case demonstrates the length to which the Pennsylvania courts have gone in applying this principle. It was there applied in favor of a stockholder of the purchasing corporation, an application which our Supreme Court expressly rejected in Heilbrunn.
The right of appraisal accorded to a dissenting stockholder by the merger statutes is in compensation for the right which he had at common law to prevent a merger. Chicago Corporation v. Munds, 20 Del.Ch. 142, 172 A. 452. At common law a single dissenting stockholder could also prevent a sale of all of the assets of a corporation. 18 C.J.S. Corporations § 515, p. 1194. The Legislatures of many states have seen fit to grant the appraisal right to a dissenting stockholder not only under the merger statutes but as well under the sale of assets statutes. Our Legislature has seen fit to expressly grant the appraisal right only under the merger statutes. This difference in treatment of the rights of dissenting stockholders may well have been deliberate, in order "to allow even greater freedom of action to corporate majorities in arranging combinations than is possible under the merger statutes." 72 Harv.L. Rev. 1132, "The Right of Shareholders Dissenting From Corporate Combinations To Demand Cash Payment For Their Shares."
While plaintiff's contention that the doctrine of de facto merger should be applied in the present circumstances is not without appeal, the subject is one which, in my opinion, is within the legislative domain. Moreover it is difficult to differentiate between a case such as the present and one where the reorganization plan contemplates the ultimate dissolution of the selling corporation but does not formally require such procedure in express terms. *26 The Supreme Court of Iowa in Graeser v. Phoenix Finance Co., 218 Iowa 1112, 254 N.W. 859, wherein the court considered the identical state of facts which were presented to this court in Argenbright v. Phoenix Finance Co., supra, had this to say: "We think the evidence fairly shows that, while the plan pursued contemplated the ultimate dissolution of the old Phoenix Corporations, this was not inconsistent with the sale of their corporate assets to the Phoenix Finance Corporation, in accordance with the provisions of the Delaware statute. * * * Under the agreements thus made, the cash, stock, and securities of Phoenix Finance Corporation, which were given in exchange for the assets of the St. Louis and Des Moines companies, became the property of these respective companies, and these corporations did not cease to exist, as would be the necessary result of a consolidation, but still continued in existence as corporate entities." By the same token, Arco continued in existence as a corporate entity following the exchange of securities for its assets. The fact that it continued corporate existence only for the purpose of winding up its affairs by the distribution of Loral stock is, in my mind, of little consequence. The argument underlying the applicability of the doctrine of de facto merger, namely, that the stockholder is forced against his will to accept a new investment in an enterprise foreign to that of which he was a part has little pertinency. The right of the corporation to sell all of its assets for stock in another corporation was expressly accorded to Arco by § 271 of Title 8, Del.C. The stockholder was, in contemplation of law, aware of this right when he acquired his stock. He was also aware of the fact that the situation might develop whereby he would be ultimately forced to accept a new investment, as would have been the case here had the resolution authorizing dissolution followed consummation of the sale. Argenbright v. Phoenix Finance Co., supra; Finch v. Warrior Cement Corp., supra. Inclusion of the condition in the sale agreement does not in any way add to his position to complain.
There is authority in decisions of courts of this state for the proposition that the various sections of the Delaware Corporation Law conferring authority for corporate action are independent of each other and that a given result may be accomplished by proceeding under one section which is not possible, or is even forbidden under another. For example, dividends which have accrued to preferred stockholders may not be eliminated by an amendment to the corporate charter under § 242, Title 8. Keller v. Wilson & Co., 21 Del.Ch. 391, 190 A. 115. On the other hand, such accrued dividends may be eliminated by a merger between the corporation and a wholly owned subsidiary. Federal United Corporation v. Havender, 24 Del.Ch. 318, 11 A.2d 331; Hottenstein v. York Ice Machinery Corp., D.C.Del., 45 F.Supp. 436, Id., 3 Cir., 136 F.2d 944. In Langfelder v. Universal Laboratories, D.C., 68 F.Supp. 209, Judge Leahy commented upon these holdings as follows:
"* * * Havender v. Federal United Corporation, Del.Sup., 11 A.2d 331 and Hottenstein v. York Ice Machinery Corp., D.C.Del., 45 F.Supp. 436; Id., 3 Cir., 136 F.2d 944 hold that in Delaware a parent may merge with a wholly owned subsidiary and thereby cancel old preferred stock and the rights of the holders thereof to the unpaid, accumulated dividends, by substituting in lieu thereof stocks of the surviving corporation. Under Delaware law, accrued dividends after the passage of time mature into a debt and can not be eliminated by an amendment to the corporate charter under Sec. 26 of the Delaware Corporation Law, Rev. Code 1935, § 2058. But the right to be paid in full for such dividends, notwithstanding provisions in the charter contract, may be eliminated by means of a merger which meets the standard of fairness. The rationale is that a merger is an act of independent legal significance, and when it meets the requirements of fairness and all other *27 statutory requirements, the merger is valid and not subordinate or dependent upon any other section of the Delaware Corporation Law."
In a footnote to Judge Leahy's opinion the following comment appears:
"The text is but a particularization of the general theory of the Delaware Corporation Law that action taken pursuant to the authority of the various sections of that law constitute acts of independent legal significance and their validity is not dependent on other sections of the Act. Havender v. Federal United Corporation proves the correctness of this interpretation. Under Keller v. Wilson & Co. accrued dividends are regarded as matured rights and must be paid. But, this does not prevent a merger, good under the provisions of Sec. 59, from having the incidental effect of wiping out such dividend rights, i. e., Sec. 59 is complete in itself and is not dependent upon any other section, absent fraud. The same thing is true with most other sections of the Corporation Law."
The situation posed by the present case is even stronger than that presented in the Havender and York Ice cases. In those cases the court permitted the circumvention of matured rights by proceeding under the merger statute. Here, the stockholder has no rights unless another and independent statute is invoked to create a right. A holding in the stockholder's favor would be directly contrary to the theory of the cited cases.
I conclude that the transaction complained of was not a de facto merger, either in the sense that there was a failure to comply with one or more of the requirements of § 271 of the Delaware Corporation Law, or that the result accomplished was in effect a merger entitling plaintiff to a right of appraisal.
Defendant's motion for summary judgment is granted. Order on notice.