PRESENT:  Lemons, C.J., Goodwyn, Millette, Mims, McClanahan and Powell, JJ., and Lacy, S.J.

ROBERT B. FISHER, ET AL.

OPINION BY
v.      Record No. 140444          JUSTICE S. BERNARD GOODWYN
                                          January 8, 2015
TAILS, INC.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge

In this appeal, we consider whether a shareholder in a Virginia corporation is entitled to appraisal rights under Virginia law when a Virginia corporation changes its state of incorporation prior to a sale of its assets.

Background

On August 29, 2013, Robert B. Fisher, Carla L. Fisher, Bradley G. Rhodes and James D. Schwartz (Minority Shareholders) filed a complaint in the Circuit Court of Henrico County to demand shareholder appraisal rights concerning the sale of Tails, Inc. (Tails).  The Minority Shareholders sought a declaratory judgment regarding whether the transaction by which Tails sold all of its assets, after changing its state of incorporation from Virginia to Delaware, gave rise to appraisal rights for the Minority Shareholders.  The Minority Shareholders also requested monetary damages for various violations predicated upon the existence of the alleged appraisal rights. Tails filed a demurrer to the complaint.

The circuit court entered a final order sustaining the demurrer without leave to amend. The circuit court noted that changing the Tails corporate domicile from Virginia to Delaware did not trigger appraisal rights, and that "[t]he complaint fail[ed] to state facts sufficient to support the asserted causes of action." The Minority Shareholders appeal.

Facts

Tails was organized as a Virginia corporation to operate as a regional franchisee of RE/MAX LLC, a Delaware limited liability company (RE/MAX). Tails held franchise rights for the District of Columbia, Maryland, Virginia and West Virginia. Officers, directors or employees of RE/MAX or its affiliates owned a majority of the outstanding shares of Tails. The Minority Shareholders held approximately 21% of the outstanding shares.

On August 9, 2013, Buena Suerte Holdings, Inc. (Buena Suerte), another affiliate of RE/MAX, and Tails signed a "Plan of Reorganization and Purchase Agreement" in which Tails would be sold to Buena Suerte in four steps. First, Tails would become a Delaware corporation, changing its state of incorporation from Virginia to Delaware pursuant to Virginia Code § 13.1-722.2 and title 8, § 265 of the Delaware Code (reincorporation step). Second, Tails would merge with and

2

into a newly-formed Delaware limited liability company, Tails, LLC (merger step). Tails, LLC would be a subsidiary of a newly-formed holding company, Tails Holdco, Inc. (Holdco), and Holdco would hold all of Tails, LLC's membership interests. Third, Holdco would cause Tails, LLC to amend and restate its LLC agreement to remove certain limited liability company provisions (amendment step). Finally, Holdco would sell Buena Suerte all of its membership interests in Tails, LLC (the sale).

On August 12, 2013, each of the Minority Shareholders received a "Notice and Proxy/Information Statement" stating that there was a proposal for a cash sale of all of the business assets held by Tails to Buena Suerte. A shareholder meeting was scheduled to take place on September 4, 2013. Before the September 4, 2013 shareholder meeting, each of the Minority Shareholders served Tails with a "Notice of Intention to Demand Payment for Shares."

On September 4, 2013, Tails held a special shareholders' meeting where the shareholders voted on several proposals including the four steps addressed above. The Minority Shareholders voted against each of the proposals, but the proposals were passed by a majority vote. Tails undertook each of the four steps discussed above between October 7 and October 9, 2013.

Analysis

The Minority Shareholders argue they were entitled to appraisal rights because a series of transactions starting with a change in corporate domicile ultimately resulted in an asset sale, and an asset sale triggers appraisal rights for shareholders in a Virginia corporation.  The Minority Shareholders assert that the circuit court erred in sustaining the demurrer because it failed to recognize the "step transaction" doctrine or the "equitable substance over form" doctrine in determining that their appraisal rights were not triggered under Virginia law.  We disagree with the Minority Shareholders.  Virginia statutory law settles this matter, and the circuit court did not err.

This Court reviews a trial court's ruling to grant a demurrer de novo.  See Yuzefovsky v. St. John's Wood Apts., 261 Va. 97, 102, 540 S.E.2d 134, 137 (2001).  A trial court will grant a demurrer when the pleading fails to state a cause of action upon which relief can be granted.  Code § 8.01-273.  For the purposes of the proceedings on the demurrer, the movant admits the truth of all material facts properly pleaded.  CaterCorp, Inc. v. Catering Concepts, Inc., 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993).

Virginia Code § 13.1-722.2 concerns domestication of corporations and in regards to a Virginia corporation becoming a corporation in a foreign jurisdiction, states as follows:

> B.  A domestic corporation not required by law to be a domestic corporation may become a foreign corporation if the jurisdiction in which the corporation intends to domesticate allows for the domestication.  Regardless of whether the laws of the foreign jurisdiction require the adoption of a plan of domestication, the domestication shall be approved in the manner provided in this article.  The laws of the jurisdiction in which the corporation domesticates shall govern the effect of domesticating in that jurisdiction.

A Virginia corporation can "domesticate" by changing the state where it is incorporated.  Va. Code § 13.1-722.2. Virginia corporations that decide to domesticate in another state are governed by the laws of that other state once the domestication is completed.  Id.; see also Stockbridge v. Gemini Air Cargo, Inc., 269 Va. 609, 613, 611 S.E.2d 600, 602 (2005). Virginia law allowed Tails to become a Delaware corporation, and it is undisputed that Tails properly changed its domicile to Delaware.

Virginia Code § 13.1-730 states that minority shareholders are entitled to "appraisal rights" in the event of certain corporate transactions.  Appraisal rights give "corporate shareholders who oppose [certain] extraordinary corporate action[s]" the right "to have their shares judicially appraised

5

and to demand that the corporation buy back their shares at the appraised value." Black's Law Dictionary 122 (10th ed. 2014).

Virginia Code § 13.1-730(A) provides:

A shareholder is entitled to appraisal rights, and to obtain payment of the fair value of that shareholder's shares, in the event of any of the following corporate actions:

1. Consummation of a merger to which the corporation is a party (i) if shareholder approval is required for the merger by § 13.1-718, except that appraisal rights shall not be available to any shareholder of the corporation with respect to shares of any class or series that remain outstanding after consummation of the merger, or (ii) if the corporation is a subsidiary and the merger is governed by § 13.1-719;

2. Consummation of a share exchange to which the corporation is a party as the corporation whose shares will be acquired, except that appraisal rights shall not be available to any shareholder of the corporation with respect to any class or series of shares of the corporation that is not exchanged;

3. Consummation of a disposition of assets pursuant to § 13.1-724 if the shareholder is entitled to vote on the disposition;

4. An amendment of the articles of incorporation with respect to a class or series of shares that reduces the number of shares of a class or series owned by the shareholder to a fraction of a share if the corporation has the obligation or right to repurchase the fractional share so created; or

5. Any other amendment to the articles of incorporation, or any other merger, share exchange or disposition of assets to the extent provided by the articles of incorporation, bylaws or a resolution of the board of directors.

6

Virginia Code § 13.1-730 tracks closely with the Model Business Corporation Act (MBCA).  Compare Va. Code § 13.1-730 with MBCA § 13.02 (2014); see also Allen C. Goolsby & Steven M. Haas, Goolsby & Haas on Virginia Corporations § 15.1 (5th ed. 2014).  However, unlike the MBCA, Virginia Code § 13.1-730 does not include appraisal rights upon "consummation of a domestication."  Compare Va. Code § 13.1-730 with MBCA § 13.02(a)(6) (2014).

In Virginia Code § 13.1-730(A), the General Assembly chose to grant appraisal rights to minority shareholders in five scenarios.  While the General Assembly has incorporated most of the MBCA's appraisal rights provisions into Virginia Code § 13.1-730, it has not incorporated the MBCA's provision granting appraisal rights to shareholders in the event of a change in corporate domicile.  The General Assembly prescribed a limited list of triggers for appraisal rights and did not include a change in corporate domicile on that list.  Applying the statutory canon of expressio unius est exclusio alterius ("the express mention of one thing excludes all others"), we hold that the General Assembly intended to exclude a change in corporate domicile from this list.  See Smith Mtn. Lake Yacht Club, Inc. v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001).  Therefore, the circuit court did not err in ruling that the

domestication of Tails as a Delaware corporation did not entitle the Minority Shareholders to appraisal rights.

Once a corporation's state of incorporation is transferred to Delaware, it is subject to Delaware corporate law. Del. Code Ann. tit. 8, § 265(d); Va. Code § 13.1-722.2. Delaware law does not provide appraisal rights for a sale of corporate assets. Del. Code Ann. tit. 8, § 262(b); see also, e.g., Hariton v. Arco Electronics, Inc., 182 A.2d 22, 25 (Del. Ch. 1962) (noting that while most state legislatures have "seen fit to grant the appraisal right to a dissenting stockholder" in both merger and "sale of assets" situations, the Delaware legislature has made that right available "only under the merger statutes"), aff'd, 188 A.2d 123 (Del. 1963); Tanzer v. Int'l Gen'l Indus., 402 A.2d 382, 390 (Del. Ch. 1979) ("[A]ppraisal rights are not available on a sale of assets.").

The Minority Shareholders urged the circuit court to apply the "step transaction" doctrine or the "equitable substance over form" doctrine to find they were entitled to appraisal rights under Virginia law. On appeal they argue that the circuit court erred by not doing so.

The Minority Shareholders note that while it is a question of first impression in Virginia, Delaware courts have applied the equitable step transaction doctrine in interpreting transactions. See, e.g., Noddings Inv. Grp., Inc. v. Capstar

8

Commc'ns, Inc. (Noddings I), No. 16538, 1999 Del. Ch. LEXIS 56, at *21, *23 (Del. Ch. March 24, 1999), aff'd, 741 A.2d 16 (Del. 1999).  The step transaction doctrine "treats the 'steps' in a series of formally separate but related transactions involving the transfer of property as a single transaction, if all the steps are substantially linked."  Bank of N.Y. Mellon Trust Co., N.A. v. Liberty Media Corp., 29 A.3d 225, 239-40 (Del. 2011) (citing Noddings I, 1999 Del. Ch. LEXIS 56, at *21 (footnote and internal quotation marks omitted)).  For example, in Noddings I, the Delaware Court of Chancery applied the step transaction doctrine when a company "spun off" part of its assets to start a new company, and that new company immediately merged with another company in a planned series of transactions.  Id. at *1-2.  The plaintiffs in that case had a contractual right to purchase shares of the company upon merging, but due to the spin off, they lost that right.  Id.  The Noddings I court held that because there was evidence the spin off and the merger were in actuality one transaction, the court would grant the plaintiffs the rights they would have had if a traditional merger had taken place.[*]  Id. at *20.

---

[*] Notably, on rehearing, the court ruled that the doctrine of independent legal significance did not apply to this suit and was not rejected because New York law applied, rather than Delaware law, and because the case involved an issue of contract interpretation, not corporate law.  Noddings Inv. Grp., Inc. v.

The Minority Shareholders also provide authority to support their contention that Delaware courts have also used the equitable doctrine of substance over form when there are unfair but legal applications of a particular statute or breaches of fiduciary duties while the transaction was technically compliant with the law.  See, e.g., Gatz v. Ponsoldt, 925 A.2d 1265, 1280 (Del. 2006); Schnell v. Chris-Craft Indus., Inc., 285 A.2d 437, 439 (Del. 1971); Louisiana Mun. Police Emples. Ret. Sys. v. Crawford (LAMPERS), 918 A.2d 1172, 1191-92 (Del. Ch. 2007).  For example, in LAMPERS, the Delaware Court of Chancery ruled that cash consideration characterized as a special cash dividend would trigger dissenting shareholders' appraisal rights because the transaction, in substance, actually involved consideration for a merger and not payment of a dividend.  918 A.2d at 1191-92.

The Minority Shareholders argue that applying the step transaction doctrine or the substance over form doctrine, the four transactions that took place on October 7 to 9, 2013 should be viewed as one transaction, and the substance of that transaction was the sale of all of Tails' assets.  They conclude that Tails' change in corporate domicile should have been disregarded under the step transaction or the substance over

---

Capstar Commc'ns, Inc., No. 16538, 1999 Del. Ch. LEXIS 89, at *1, *3 (Del. Ch. Apr. 16, 1999).

10

form doctrine, and that application of those equitable doctrines thus entitles them to appraisal rights, because the Code of Virginia provides for appraisal rights in the event of a disposition of all or substantially all of a corporation's assets. See Code § 13.1-730(A)(3). In essence, the Minority Shareholders argue that Tails' change in corporate domicile may be ignored because it was just the first "step" in a series of technically distinct but related transactions that should be viewed together as components of a larger transaction and judged under Virginia law. We disagree.

Assuming, arguendo, that Virginia corporation law allows consideration of the step transaction doctrine and the substance over form doctrine as articulated by Delaware courts, the circuit court did not err in granting the demurrer filed in this case because the purpose of the substance over form and the step transaction doctrines is to prevent transactional formalities from blinding the court to what truly occurred. They allow a court to look beyond form to the substance of a transaction to equitably define what occurred in a transaction. See Gatz, 925 A.2d at 1280; Noddings I, 1999 Del. Ch. LEXIS 56, at *21-24 (quoting Orr v. Kinderhill Corp., 991 F.2d 31 (2d Cir. 1993)). However, Delaware courts have applied the doctrine of "independent legal significance" as a rationale for not applying equitable principles to recharacterize actions of defined legal

11

significance.  Under this doctrine, a transaction effected pursuant to a statute will be subject to the requirements and consequences of that statute alone.  See Orzeck v. Englehart, 195 A.2d 375, 378 (Del. 1963).  It is not within a court's purview to second-guess the legislature's decision evidenced by statute.  Hariton, 182 A.2d at 25; see also generally Ferguson v. Board of Supervisors, 133 Va. 561, 569, 113 S.E. 860, 862 (1922) ("Equity . . . is not so inconsistent as to attempt the revision or supervision of governmental action lawfully exercised through the legislative department.").

There is no authority cited by the Minority Shareholders that supports their assertion that a statutorily-sanctioned domestication of a corporation may be considered a step in a step transaction analysis or ignored in determining substance over form.  Domestication of the corporation is not properly considered a step in the step transaction or substance over form analysis because domestication concerns the law that is applicable to the transaction rather than an equitable characterization of the transaction that took place.  Domestication is regulated by statute.

Thus, recognition of the substance over form doctrine or the step transaction doctrine would in no way change the legal significance of the domestication of Tails as a Delaware corporation.  Considering the various other transactions as one,

12

and characterizing that transaction as a sale of all Tails'
assets, does not change the statutes which dictate that Delaware
law properly applied in determining whether the Minority
Shareholders were entitled to appraisal rights.  Under Delaware
law, they were not.  The circuit court did not err in granting
the demurrer.

Conclusion

Accordingly, for the reasons stated, we will affirm the
judgment of the circuit court.

__Affirmed.__