# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ASAF BARKAN,

    Plaintiff,

v.

EXABEAM, INC.,

    Respondent.

C.A. No. 2024-0855-MTZ

DOMINGO MIHOVILOVIC, NADAV LAVY, URI BEN-DOR and RAJIV TANEJA, as Trustee of the TANEJA 2004 FAMILY TRUST, on behalf of themselves and all other similarly situated holders of common stock of EXABEAM, INC.,

    Plaintiffs,

v.

C.A. No. 2024-0976-MTZ

EXABEAM, INC., ADAM GELLER, THERESIA GOUW, MATTHEW HOWARD, MARK JENSEN, RAVI MHATRE, JEB MILLER, NIR POLAK, PRAVIN VAZIRANI, ASPECT VENTURES, LP, ASPECT VENTURES I-A, L.P., ASPECT VENTURES II, L.P., ASPECT VENTURES II-A, L.P., ACREW DCF EXABEAM SPV, L.P., ACREW DCF EXABEAM AGGREGATOR, L.P., ACREW DIVERSIFY CAPITAL FUND, L.P., NORWEST VENTURE

PARTNERS XII, L.P., ICON )
VENTURES V, L.P., LIGHTSPEED )
VENTURE PARTNERS SELECT )
III, L.P, LIGHTSPEED VENTURE )
PARTNERS SELECT II, L.P., )
LIGHTSPEED STRATEGIC )
PARTNERS I, L.P., LSVP XB- F, )
LLC, XA SPV, LLC, BLUE OWL )
OPPORTUNISTIC LENDING I (H) )
LP, BLUE OWL TECHNOLOGY )
FINANCE CORP., BLUE OWL )
OPPORTUNISTIC LENDING )
MASTER FUND II LP, and BLUE )
OWL OPPORTUNISTIC LENDING )
DL (C) LP, )
  )
        Defendants. )

## MEMORANDUM OPINION

Date Submitted:  December 5, 2024
Date Decided:  April 11, 2025

Kimberly A. Evans, Lindsay K. Faccenda, Daniel M. Baker, BLOCK & LEVITON LLP, Wilmington, Delaware; Jason Leviton, BLOCK & LEVITON LLP, Boston, Massachusetts, *Attorneys for Petitioner and Proposed Intervenor Asaf Barkan.*

Ryan D. Stottmann, Kirk C. Andersen, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, Delaware; Mark McKane, Alistair Blacklock, Justine Yu, KIRKLAND & ELLIS LLP, San Francisco, California, *Attorneys for Respondent and Defendant Exabeam, Inc.*

Christopher P. Quinn, KAHN SWICK & FOTI, LLC, Wilmington, Delaware; Michael J. Palestina, KAHN SWICK & FOTI, LLC, New Orleans, Louisiana, *Attorneys for Plaintiffs Domingo Mihovilovic, Nadav Lavy, Uri Ben-Dor and Rajiv Taneja, as Trustee of the TANEJA 2004 Family Trust.*

2

Andrew D. Cordo, Andrew D. Berni, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, Delaware; Ignacio E. Salceda, Rebecca Epstein, WILSON SONSINI GOODRICH & ROSATI, P.C., Palo Alto, California, *Attorneys for Defendants Adam Geller, Theresia Gouw, Matthew Howard, Mark Jensen, Ravi Mhatre, Jeb Miller, Nir Polak, Pravin Vazirani, Aspect Ventures, LP, Aspect Ventures I-A, L.P., Aspect Ventures II, L.P., Aspect Ventures II-A, L.P., Acrew DCF Exabeam SPV, L.P., Acrew DCF Exabeam Aggregator L.P., Acrew Diversify Capital Fund L.P., Norwet Venture Partners XII, L.P., ICON Ventures V, L.P., Lightspeed Venture Partners Select III, L.P., Lightspeed Venture Partners Select II, L.P., Lightspeed Strategic Partners I, L.P., LSVP XB-F, LLC, XA SPV, LLC, Blue Owl Opportunistic Lending I (H) LP, Blue Owl Technology Finance Corp., Blue Owl Opportunistic Lending Master Fund II LP, and Blue Owl Opportunistic Lending DL (C) LP.*

**ZURN, Vice Chancellor.**

A former stockholder filed a petition purportedly pursuant to Section 262 of the Delaware General Corporation Law (the "DGCL").[1] Section 262 provides appraisal rights. But the petition does not seek appraisal. It candidly admits it is a "substitution" to obtaining books and records under Section 220 of the DGCL for a presuit investigation.[2] The petitioner relies on an instance in which this Court exercised its discretion in limiting an appraisal action's scope of discovery to the books and records that stockholder could have received but whose proper Section 220 demand was frustrated by a merger.[3] Here, the petitioner never served a Section 220 demand, but maintains he would have been entitled to books and records had the subject merger not closed so abruptly. The company moved to dismiss the petition for failure to state a claim. Based on the DGCL's plain language and well-developed jurisprudence, I grant that motion.

The petitioner also seeks to intervene in a putative class action filed by fellow former stockholders for the limited purpose of staying those proceedings until the petitioner completes his presuit investigation. Because the petitioner has no standing to seek inspection, I deny the motion to intervene and stay.

---

[1] 8 *Del. C.* § 262; *see also Barkan v. Exabeam, Inc.*, C.A. No. 2024-0855-MTZ (Del. Ch.) (the "262 Action"), Docket Item ("D.I.") 1 (the "Petition"), at ¶ 5. Citations to the Petition are in the form "Pet. ¶ ___." Citations to the June 18, 2024 Information Statement are in the form "IS at ___," available at D.I. 1 Ex. A.

[2] Pet. ¶ 5.

[3] *Wei v. Zoox, Inc.*, 268 A.3d 1207 (Del. Ch. 2022).

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the petitioner's Verified Petition (the "Petition") and the documents it incorporates by reference.

### A. The Merger And Information Statement

Exabeam, Inc. ("Exabeam" or the "Company") was a private Delaware corporation that offered AI-driven cybersecurity.[4] Exabeam had two classes of stock: preferred and common.[5] By an Agreement and Plan of Merger dated May 4, 2024, an affiliate of LogRhythm Parent, LP acquired Exabeam in a private stock-for-stock merger (the "Merger").[6] LogRhythm is owned by private equity firm Thoma Bravo, L.P.[7] The merger agreement was adopted and approved by written consent of a majority of Exabeam's common and preferred stockholders, voting together as a single class on an as-converted basis.[8]

The preferred stockholders allegedly were insiders with ties to Thoma Bravo, received unique benefits in the Merger, and will continue to participate in the post-

---

[4] Pet. at 2, ¶ 7.

[5] *Id.* ¶ 9; IS at 2.

[6] Pet. ¶ 7; IS at 1.

[7] Pet. ¶ 7.

[8] *Id.* ¶ 9; IS at 2.

Merger company.[9] The Merger cancelled Exabeam common shares without paying any consideration.[10]

On June 18, Exabeam distributed the Information Statement concerning the Merger.[11] It stated the Merger was expected to close in the third quarter of 2024, but did not specify a date.[12] It also informed Exabeam stockholders of their appraisal rights under Section 262 of the DGCL,[13] and specified the process by which stockholders may perfect those rights. It requested:

> In order for a Stockholder to exercise his, her or its right to an appraisal, such Stockholder must mail or deliver to the Company a written demand for appraisal of such Stockholder's shares as provided by the DGCL within 20 days after the mailing of this notice to:
>
> Exabeam, Inc.
> 1051 E Hillsdale Blvd, 4th Floor,
> Foster City, California 94404
> Attention: Adam Geller; Holly Grey[14]

The Merger closed on July 2.[15] On July 17, Exabeam and LogRhythm announced its consummation.[16]

---

[9] Pet. ¶ 2.

[10] *Id.* ¶¶ 2, 10; IS at 12.

[11] Pet. ¶ 7; IS at 1.

[12] IS at 12.

[13] *Id.* at 14.

[14] *Id.* at 20.

[15] Pet. ¶ 16.

[16] *Id.* ¶ 17.

6

**B.** **An Exabeam Common Stockholder Demanded Section 220 Documents.**

Ten days after the Company disseminated the Information Statement, an Exabeam stockholder named Schneur Schneerson served a Section 220 demand seeking to inspect Exabeam's books and records concerning the Merger.[17] Schneerson was represented by Block & Leviton LLP.[18] The same firm represents the petitioner here, Asaf Barkan.[19] Block & Leviton also asked the Company when the Merger might close.[20]

---

[17] *Schneerson v. Exabeam, Inc.*, 2024-0729-LM (Del. Ch.) (the "220 Action") at D.I. 1, Ex. A at 2; Ex. C at 1. The Court may properly consider documents referenced in or integral to the pleading and take judicial notice of public filings. *See Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004) (noting that on a motion to dismiss, the Court may consider documents that are "incorporated by reference into" or "integral" to the complaint); *Stanco v. Rallye Motors Hldg., LLC*, 2019 WL 7161338, at *2 (Del. Ch. Dec. 23, 2019) ("When reviewing a motion to dismiss, the Court . . . may take judicial notice of relevant public filings." (internal quotation marks and citation omitted)). Because the 220 Action is referenced in the Petition (Pet. ¶ 4 n.1) and part of the public record, I consider the 220 Action's filings on Exabeam's motion to dismiss. Del. R. Evid. 201; *see, e.g.*, *Aequitas Sols., Inc. v. Anderson*, 2012 WL 2903324, at *3 n.17 (Del. Ch. July 10, 2012) (taking judicial notice of a pleading filed in a California bankruptcy proceeding); *Baca v. Insight Enters., Inc.*, 2010 WL 2219715, at *1 (Del. Ch. June 30, 2010) (considering court filings in related derivative and federal securities actions); *Nelson v. Emerson*, 2008 WL 1961150, at *8–9 (Del. Ch. May 6, 2008) (taking judicial notice of "documents filed in the related federal court proceedings" on a motion to dismiss); *Orloff v. Shulman*, 2005 WL 3272355, at *12 (Del. Ch. Nov. 23, 2005) (taking judicial notice of pleadings in a related bankruptcy proceeding).

[18] 220 Action, D.I. 1 at 8.

[19] Pet. at 10.

[20] 220 Action, D.I. 1 Ex. C at 1.

On July 1, the Company responded via email, acknowledging that it had received Schneerson's inspection demand and intended to timely respond.[21] The Company also told Block & Leviton the Merger was expected to close the next day.[22] The Company formally responded to Schneerson's inspection demand on July 8, declining to produce books and records.[23] Schneerson filed a Section 220 petition in this Court the next day,[24] but dismissed it a few days later.[25]

### C. Barkan Sought Inspection Through A Section 262 Petition.

Barkan held Exabeam common stock before the Merger.[26] He did not serve a Section 220 demand. Instead, the day after the Company distributed the Information Statement, Barkan sent Exabeam's representatives Adam Geller and Holly Grey an email with the subject line "Written Demand for an Appraisal of Shares."[27] The email states:

> To Whom It May Concern,
>
> I, [Asaf Barkan], the undersigned, am a stockholder of Exabeam, holding [343,561] shares of common stock in the company. I

---

[21] 220 Action, D.I. 1 Ex. C at 1.

[22] *Id.*

[23] 220 Action, D.I. 1 Ex. B.

[24] 220 Action, D.I. 1.

[25] 220 Action, D.I. 5.

[26] Pet. ¶ 6.

[27] *Pet.* Ex. 2.

hereby demand appraisal of my shares pursuant to Section 262 of the Delaware General Corporation Law. . . .

I do not consent to, nor will I vote in favor of, the proposed merger. . . .[28]

On June 30, Grey responded via email, acknowledging the Company's "receipt of [Barkan's] email" and "encourag[ing Barkan] to consult with [his] own legal counsel regarding compliance with the Information Statement and Delaware law" concerning "the process for submitting any appraisal demand."[29] Barkan did not submit any other demand purporting to seek appraisal.

On August 16, Barkan filed the Petition "as a substitute to Section 220 of the DGCL, seeking the Company's books and records to facilitate a pre-suit investigation into the Merger."[30] The Petition does not request an appraisal or other determination of Exabeam's value.[31] Instead, the Petition generally seeks "the Company's books and records to facilitate a presuit investigation into the Merger."[32] It requests that the Court:

- [d]etermine that Petitioner has perfected his right to appraisal pursuant to Section 262; [and]

---

[28] *Id.*

[29] *Id.*

[30] Pet. ¶ 23.

[31] *Id.* at 9.

[32] *Id.* ¶ 23.

9

- [d]etermine that Petitioner is entitled to the scope of discovery of what Petitioner could have obtained under Section 220 . . .[33]

Barkan claims he would have been entitled to Section 220 documents but for the Merger's closing.[34] The Petition does not specify the types or scope of the books and records Barkan seeks.

On August 27, Barkan served the Company with a set of document requests, purportedly seeking Section 220 documents.[35] Those document requests seek "Formal" and "Informal" board materials, officer-level materials, and Merger-related engagement letters, conflict disclosures, and director independence questionnaires.[36]

## D. Barkan Sought to Intervene In The Plenary Action.

While Barkan pursued presuit documents, other former Exabeam common stockholders opted for a different strategy: a plenary action challenging the Merger.

---

[33] *Id.* at 9.

[34] *Id.* ¶¶ 5, 22.

[35] 262 Action, D.I. 6; *see also id.* at D.I. 10 Ex. A.

[36] 262 Action, D.I. 6. The document requests define "Formal Board Materials" as "the Board-level documents that formally evidence the Board's deliberations and decisions and comprise the materials that the Board formally received and considered." *Id.* at 3. "Informal Board Materials" are defined as "the informal materials that evidence the Board's deliberations, the information that they received, and the decisions they reached, including communications between the directors and the Company's officers and senior employees, such as information distributed to the directors outside of formal channels, in between formal meetings, or in connection with other types of board gatherings, including emails and other types of communications sent among the directors themselves, even if the directors used non-corporate accounts." *Id.* Barkan's document requests do not define "officer-level materials."

On September 19, former Exabeam stockholders filed a purported class action (the "Plenary Action"),[37] alleging the Merger was "a conflict-of-interest" "fire sale" negotiated by a majority-conflicted board and approved by Exabeam's preferred stockholders to favor their self-interest over the interest of Exabeam's common stockholders, who received no consideration for their shares in the Merger.[38]

On December 16, Barkan moved to intervene in the Plenary Action under Court of Chancery Rule 24(b) for the limited purpose of staying those proceedings so he could complete his presuit investigation.[39] The plenary plaintiffs objected,[40] contending a stay "would accomplish nothing but needless delay" because Barkan had no standing to "inspect[] Exabeam's books and records" due to his failure to "perfect his appraisal right."[41] I took the motion to intervene under advisement in hopes I could address it with the 262 Action's motion to dismiss without staying the Plenary Action.[42]

---

[37] *Mihovilovic v. Exabeam, Inc.*, C.A. No. 2024-0976-MTZ (Del. Ch.) (the "Plenary Action") at D.I. 1 ¶ 129.

[38] *Id.* ¶¶ 1, 6, 12, 19.

[39] Ct. Ch. R. 24(b); Plenary Action, D.I. 17 ¶¶ 4–5, 20–21.

[40] Plenary Action, D.I. 22. The Plenary Action defendants have not objected to or otherwise taken a position on Barkan's motion to intervene.

[41] Plenary Action, D.I. 22 ¶ 7.

[42] Plenary Action, D.I. 25. The Plenary Action defendants moved to dismiss the complaint. Plenary Action, D.I. 28; D.I. 29. The parties are expected to complete briefing on those motions by April 15. Plenary Action, D.I. 27.

### E.    Procedural Posture

After Barkan filed his Petition on August 16, Exabeam moved to dismiss under Court of Chancery Rule 12(b)(6).[43]  The parties completed briefing on October 18.[44]  On December 5, I determined oral argument was not necessary and took the matter under advisement.[45]  In the Plenary Action, Barkan moved to intervene on December 16.[46]  The parties completed briefing on that motion on January 27, 2025.[47]  I told the parties I would consider both motions together.[48]

## II.    ANALYSIS

Both Exabeam's motion to dismiss and Barkan's motion to intervene turn on whether Barkan has standing to inspect documents via the 262 Action.  I conclude he does not.

### A.    Exabeam's Motion To Dismiss The 262 Action Is Granted.

"The pleading standards" under Delaware law are "minimal."[49]  On a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept all

---

[43] Ct. Ch. R. 12(b)(6); 262 Action, D.I. 8.

[44] 262 Action, D.I. 8, 10, 15.

[45] 262 Action, D.I. 17.

[46] Plenary Action, D.I. 17.

[47] Plenary Action, D.I. 17, 22, 23.

[48] Plenary Action, D.I. 25.

[49] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 536 (Del. 2011).

12

well-pleaded factual allegations in the Complaint as true, accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim, [and] draw all reasonable inferences in favor of the plaintiff."[50]  The Court will grant a Rule 12(b)(6) motion if the "plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[51]

Exabeam argues that the Petition should be dismissed for the threshold reason that Barkan lacks standing to seek inspection because he never served a pre-Merger Section 220 demand and is foreclosed from doing so after the Merger closed.[52]  I agree.

### 1. Barkan Lacks Standing To Obtain Section 220 Documents Because He Failed To Comply With Form And Manner Requirements.

The DGCL provides stockholders of Delaware corporations with limited inspection rights through Section 220.  Section 220 codified stockholders' extant common law right to access "the corporate books and records of a Delaware

---

[50] *Id.*

[51] *City of Fort Myers Gen. Empls.' Pension Fund v. Haley*, 235 A.3d 702, 716 (Del. 2020) (internal quotation marks and citation omitted); *see also In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006); *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 897 (Del. 2002).

[52] 262 Action, D.I. 8 at 4–10.  Exabeam also argues that the Petition should be dismissed because Barkan failed to perfect his appraisal rights and because the Petition seeks impermissibly broad discovery without specifying the types of books and records it contemplates. *Id.* at 10–15.  Because I have concluded Barkan has no Section 220 standing, and because Barkan does not actually seek appraisal, I need not address Exabeam's additional arguments.

13

corporation."[53]  "Inspection rights were recognized at common law because, as a matter of self-protection, the stockholder was entitled to know how his agents were conducting the affairs of the corporation of which he or she was a part owner."[54]

Section 220 allows "[a]ny stockholder" of a Delaware corporation (and members of nonstock corporations), "upon written demand under oath stating the purpose thereof," to inspect the company's "stock ledger," stockholder list, and "books and records" "for any proper purpose."[55]

"There is no shortage of proper purposes under Delaware law."[56]  Once a proper purpose is shown, Section 220 does not restrict how stockholders may ultimately use the information.  They may "seek an audience with the board to

---

[53] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate & Commercial Practice in Delaware Court of Chancery* § 9.07[a][1] at 9-115 (2024) (citing *State ex rel. Cochran v. Penn-Beaver Oil Co.*, 143 A. 257, 259 (Del. 1926); *State ex rel. Brumley v. Jessup & Moore Paper Co.*, 77 A. 16 (Del. 1910); *Swift v. State ex rel. Richardson*, 6 A. 856, 861 (Del. Ct. Err. & App. 1886)).  *See also State ex rel. De Julvecourt v. Pan-Am. Co.*, 61 A. 398, 399 (Del. Super. Ct. 1904), *aff'd*, 63 A. 1118 (Del. 1906); *Cent. Laborers Pension Fund v. News Corp.*, 45 A.3d 139, 143 (Del. 2012) (observing that "[s]tockholder inspection rights are codified in [Section 220]").

[54] *Saito v. McKesson HBOC, Inc.*, 806 A.2d 113, 116 (Del. 2002) (internal quotation marks, citation, and alteration omitted).

[55] 8 *Del. C.* §§ 220(a)–(b) (2010).  Unless otherwise specified, this opinion applies the DGCL and relevant caselaw prior to the DGCL's recent amendments enacted on March 25, 2025.  85 Del. Laws ch. 6, § 2 (2025).  Those amendments expressly "do not apply to or affect any action or proceeding commenced in a court of competent jurisdiction that is completed or pending, or any demand to inspect books and records made, on or before February 17, 2025." *Id.*

[56] *Melzer v. CNET Networks, Inc.*, 934 A.2d 912, 917 (Del. Ch. 2007).  Well-developed Delaware precedents have recognized a plethora of proper purposes.  *See City of Westland Police & Fire Ret. Sys. v. Axcelis Techs., Inc.*, 1 A.3d 281, 289 n.30 (Del. 2010).

14

discuss proposed reforms," "prepare a stockholder resolution for the next annual meeting," "mount a proxy fight to elect new directors," or sue.[57]

But stockholders' inspection right is neither "absolute"[58] nor "unfettered."[59] "[I]t is a qualified right depending on the facts presented."[60] That limitation reflects a "proper balance between the rights of shareholders to obtain information" and "the rights of directors to manage the business of the corporation without undue interference from stockholders."[61]

That balance manifests in the DGCL's "form and manner" requirements that a stockholder must satisfy first and foremost.[62] They require an inspection demand be "under oath" and:

---

[57] *Saito*, 806 A.2d at 117.

[58] *Paul v. China MediaExpress Hldgs., Inc.*, 2012 WL 28818, at *6 (Del. Ch. Jan. 5, 2012).

[59] *Melzer*, 934 A.2d at 917.

[60] *Compaq Computer Corp. v. Horton*, 631 A.2d 1, 4 (Del. 1993); *see also Cent. Laborers*, 45 A.3d at 143 ("Stockholders of Delaware corporations enjoy a qualified right to inspect the corporation's books and records." (quoting *Saito*, 806 A.2d at 116)).

[61] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 122 (Del. 2006); *see also Juul Labs, Inc. v. Grove*, 238 A.3d 904, 915 (Del. Ch. 2020) ("Through its Section 220 jurisprudence, the Delaware Supreme Court seeks to maintain 'an appropriate balance' between the interests of stockholders to obtain information and the right of the corporation to deny unwarranted and burdensome requests." (quoting *Seinfeld*, 909 A.2d at 118)); *see also Cent. Laborers*, 45 A.3d at 144 (observing Section 220 "recognizes the importance of striking an appropriate balance").

[62] *Cent. Laborers*, 45 A.3d at 143–44 (noting the form and manner requirements embody "important element of the statutory scheme" designed to protect corporations "from improper demands").

shall [1] state the person's status as a stockholder, [2] be accompanied by documentary evidence of beneficial ownership of the stock, and [3] state that such documentary evidence is a true and correct copy of what it purports to be.[63]

The Delaware Supreme Court has held that a stockholder must comply with "the 'form and manner' of making the demand . . . *before* the corporation determines whether the inspection request is for a proper purpose."[64]   And this Court has consistently applied that directive.[65]   The form and manner requirements are not just "a precondition" to inspection.[66]  They are "mandatory statutory procedural standing requirements."[67]  Failure to satisfy them is "statutorily fatal" to both a stockholder's

---

[63] 8 *Del. C.* § 220(b).

[64] *Cent. Laborers*, 45 A.3d at 144 (quoting 8 *Del. C.* § 220(c)).

[65] *See, e.g.*, *Martinez v. GPB Cap. Hldgs., LLC*, 2020 WL 3054001, at *9 (Del. Ch. June 9, 2020) (noting an inspection right would be "defeated and an integral part of the statute rendered nugatory when, as happened here, the demand does not satisfy the statutory mandate" of the forms-and-manner requirements); *Barnes v. Telestone Techs. Corp.*, 2013 WL 3480270, at *1 n.5 (Del. Ch. July 10, 2013) (dismissing the complaint because "the Plaintiff failed to comply with the form and manner requirements of Section 220"); *Mattes v. Checkers Drive-in Rests., Inc.*, 2000 WL 1800126, at *1 (Del. Ch. Nov. 15, 2000) (dismissing the complaint when plaintiff's demand "does not satisfy the statutory mandate" and rejecting as noncompliant "an effort to comply with the requirements of form [] made during the course of the litigation without delivering a new form of demand"); *Jacob v. Bloom Energy Corp.*, 2021 WL 733438, at *5 (Del. Ch. Feb. 25, 2021) (finding the company "was justified in rejecting [a] demand for inspection" when it "failed to comply with Section 220's form and manner requirements").

[66] *Cent. Laborers*, 45 A.3d at 141.

[67] *Id.* (instructing that courts should first determine if a stockholder "had complied with the mandatory statutory procedural standing requirements").

inspection demand and to a subsequent enforcement action.[68]

Upon receiving a demand, the corporation has five business days to respond before the stockholders may file suit to compel inspection.[69] That "response period is jurisdictional"[70] without "an equitable carve-out."[71] Section 220 requires stockholders to be record or beneficial stockholders to enforce their inspection right.[72] Nothing in Section 220's plain text or well-developed jurisprudence leaves room for circumventing the form and manner requirements.

Barkan does not dispute that he never served an inspection demand on

---

[68] *See id.*; *see also id.* at 144 ("Absent such procedural compliance, the stockholder has not properly invoked the statutory right to seek inspection, and consequently, the corporation has no obligation to respond."); *Haber v. Harnischfeger Corp.*, 1983 WL 17996, at *1 (Del. Ch. Feb. 3, 1983) (observing the form and manner requirements are "prerequisites as to the making a demand and instituting a suit thereon"); *Weisman v. W. Pac. Indus., Inc.*, 1975 WL 7108, at *2 (Del. Ch. Sept. 2, 1975) (dismissing a 220 complaint because the "unspecific demand necessarily fails to meet the strict requirement of the statute").

[69] 8 *Del. C.* § 220(c).

[70] *MaD Invs. GRMD, LLC v. GR Cos., Inc.*, 2020 WL 6306028, at *1 (Del. Ch. Oct. 28, 2020); *see also Weisman*, 1989 WL 57714, at *1 ("The five business day requirement has been interpreted to be a jurisdictional prerequisite.").

[71] *Katz v. Visionsense Corp.*, 2018 WL 3953765, at *2 (Del. Ch. Aug. 16, 2018) (ORDER).

[72] 8 *Del. C.* § 220(c); *see also Swift v. Houston Wire & Cable Co.*, 2021 WL 5763903, at *1 (Del. Ch. Dec. 3, 2021) (emphasizing that "Section 220(c) unambiguously requires that a plaintiff 'is' a stockholder at the time of filing a books and records action," and dismissing the suit because the "plaintiff's shares were cancelled before he filed suit"); *Weingarten v. Monster Worldwide, Inc.*, 2017 WL 752179, at *3 (Del. Ch. Feb. 27, 2017) ("Section 220 requires that a plaintiff own stock when the Section 220 complaint is filed."); *Lebanon Cty. Empls.' Ret. Fund v. Collis*, 287 A.3d 1160, 1211 (Del. Ch. 2022) (noting Section 220 "requires that a plaintiff be a stockholder when an enforcement action is file").

17

Exabeam.[73]  Without a demand, Barkan cannot satisfy the form and manner requirements.[74]  That failure is statutorily fatal to Barkan's standing to seek presuit inspection.[75]

Barkan first seeks an exception to these rules.  He complains the Merger closed hastily and that the abrupt closing cut off Section 220's five-business-day waiting period, hindering his ability to pursue inspection.[76]  But Section 220 provides no exception, equitable or otherwise, to the "strictly enforced" form and manner requirements.[77]  This Court cannot judicially circumvent those statutory requirements, and certainly cannot do so here where Barkan never served a demand.

### 2. Section 262 Is Not A Failsafe For Section 220's Form And Manner Requirements.

Unable to satisfy the DGCL's inspection statute, Barkan next seeks a workaround:  the DGCL's appraisal statute.  Barkan's Section 262 Petition does not

---

[73] Pet. ¶ 4 n.1 (Petitioner's counsel conceding that it "served a books and records demand . . . followed by a books and records complaint . . . both on behalf of a *different* common stockholder of the Company" (emphasis added)).

[74] *Cent. Laborers*, 45 A.3d at 141, 144.

[75] *Id.* at 141.

[76] 262 Action, D.I. 10 at 1–2.

[77] *Floreani v. FloSports, Inc.*, 2024 WL 4637689, at *2 (Del. Ch. Oct. 31, 2024); *see also Cent. Laborers*, 45 A.3d at 146; *Barnes*, 2013 WL 3480270, at *2; *Smith v. Horizon Lines, Inc.*, 2009 WL 2913887, at *2 (Del. Ch. Aug. 31, 2009); *Martinez*, 2020 WL 3054001, at *7; *Amalgamated Bank v. Yahoo! Inc.*, 132 A.3d 752, 775 (Del. Ch. 2016), *rev'd in part on other grounds by Tiger v. Boast Apparel Inc.*, 214 A.3d 933 (Del. 2019); *Mattes*, 2000 WL 1800126, at *1.

actually seek an appraisal, even nominally. It seeks presuit investigatory documents based on *Wei v. Zoox, Inc.*[78] Barkan contends that case "crafted a specific rule permitting former stockholders of a private company to seek Section 220-type documents in an appraisal action when they become foreclosed from utilizing Section 220 following the closing of a private merger."[79] That reading of *Zoox* misses the mark.

Section 262 of the DGCL affords shareholders dissenting to a transaction the right to receive the "*pro rata* share of the fair value of the appraised company—as calculated by the Court of Chancery—instead of accepting the consideration offered in the approved transaction."[80] The right to an appraisal "is entirely a creature of statute"[81] first codified in 1899.[82] "Before the Delaware appraisal statute . . . a consolidation or merger of corporations required unanimous stockholder

---

[78] 268 A.3d 1207 (Del. Ch. 2022).

[79] 262 Action, D.I. 10 at 11.

[80] *In re GGP, Inc. S'holder Litig.*, 282 A.3d 37, 55 (Del. 2022); *see also Cede & Co. v. Technicolor, Inc.*, 684 A.2d 289, 296 (Del. 1996) ("The appraisal statute affords the dissenters the right to a judicial determination of the fair value of their shareholdings."); David A. Drexler et al., *Delaware Corporation Law and Practice* § 36.01, at 36-1 (2022) ("The right of appraisal affords the stockholder a means to obtain, in cash, the judicially determined fair value of its stock.").

[81] *Kaye v. Pantone, Inc.*, 395 A.2d 369, 374 (Del. Ch. 1978); *see also Alabama By-Prods. Corp. v. Neal*, 588 A.2d 255, 256 (Del. 1991) ("An appraisal action is entirely a creature of statute." (internal quotation marks and citations omitted)); *Dell, Inc. v. Magnetar Glob. Event Driven Master Fund Ltd*, 177 A.3d 1, 20 (Del. 2017); *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121, 1134 (Del. 2020).

[82] *In re GGP*, 282 A.3d at 55.

19

approval."[83] That scheme resulted in the "unworkable"[84] situation that "a single stockholder could prevent a merger."[85] Appraisal rights are a legislative "fair and economical remedy"[86] to compensate "a dissenting stockholder . . . for the right which he had at common law to prevent a merger."[87] Such legislatively created rights that derogate "common law must be strictly construed."[88]

Unsurprisingly given this history, Section 262's plain text does not offer a

---

[83] *Id.*; *see also In re Solera*, 240 A.3d at 1133 ("The Delaware General Assembly created the appraisal remedy in 1899 to allow the sale of a corporation upon the consent of a majority of its stockholders rather than upon unanimous approval."); *Schenley Indus., Inc. v. Curtis*, 152 A.2d 300, 301 (Del. 1959) (discussing that before the Delaware appraisal statute was created, "no consolidation or merger of corporations could be effected except with the consent of all the stockholders").

[84] *In re Solera*, 240 A.3d at 1133.

[85] *Reynolds Metals Co. v. Colonial Realty Corp.*, 190 A.2d 752, 755 (Del. Ch. 1963).

[86] *Cede & Co. v. Technicolor, Inc.*, 1987 WL 4768, at *8 (Del. Ch. Jan. 13, 1987) ("In shaping the limited, statutory right to appraisal of shares, the legislature has narrowed the issues involved in order to provide a fair and economical remedy for a specific problem."), *aff'd in part, rev'd in part on other grounds*, 542 A.2d 1182 (Del. 1988); *see also Kaye*, 395 A.2d at 375 ("[T]he sole issue raised by an action seeking an appraisal should be the value of the dissenting stockholder's stock.").

[87] *See Hariton v. Arco Elecs., Inc.*, 182 A.2d 22, 25 (Del. Ch. 1962), *aff'd*, 188 A.2d 123 (Del. 1963); *Reynolds Metals*, 190 A.2d at 755 (observing when Section 262 was enacted "to permit a specified majority to override [a dissenter's] objection, the right of appraisal was given to the dissenter in compensation for the loss of the common-law right"); *Ala. By–Prods. Corp. v. Cede & Co.*, 657 A.2d 254, 258 (Del. 1995) ("[Appraisal] is a limited legislative remedy developed initially as a means to compensate shareholders of Delaware corporations for the loss of their common law right to prevent a merger or consolidation by refusal to consent to such transactions."); *Applebaum v. Avaya*, 812 A.2d 880, 893 (Del. 2002) ("[T]he right to an appraisal is a narrow statutory right that seeks to redress the loss of the stockholder's ability under the common law to stop a merger.").

[88] *State v. Brown*, 195 A.2d 379, 383 (Del. 1963).

20

means to obtain presuit investigatory documents available under Section 220. Section 262 provides only one remedy: "the fair value of the stockholder's shares of stock" as determined "by the Court of Chancery."[89] The statute allows "no basis for expanding the limited remedy," whether through "equitable principles" or otherwise.[90]

And Section 262 offers its appraisal remedy only in "strictly limited" circumstances.[91] It limits appraisal to statutorily specified transactions such as "a merger, consolidation, conversion, transfer, domestication or continuance to be effected pursuant to" enumerated sections of the DGCL.[92] Section 262 withholds that right "on a sale or other transfer of assets, charter amendment, dissolution, or

---

[89] 8 *Del. C.* § 262(a); *see also Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1187 (Del. 1988) ("[T]he only relief available is . . . the fair value of the dissenters' shares.").

[90] *In re Appraisal of ENSTAR Corp.*, 604 A.2d 404, 414 (Del. 1992) ("This Court has consistently held that there is no basis for expanding the limited remedy which is provided for in the appraisal statute by the invocation of equitable principles." (citing *Alabama–By–Prods*, 588 A.2d at 258; *Cede*, 542 A.2d at 1187; *Rabkin v. Philip A. Hunt Chem. Corp.*, 498 A.2d 1099, 1106 (Del. 1985); *Weinberger v. UOP, Inc.*, 457 A.2d 701, 714 (Del. 1983)), *overruled on other grounds by Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Est. Fund*, 68 A.3d 665 (Del. 2013).

[91] *Wolfe*, *supra* note 53, § 9.11[a] at 9-275.

[92] 8 *Del. C.* § 262(b) ("Appraisal rights shall be available for the shares of any class or series of stock of a constituent, converting, transferring, domesticating or continuing corporation in a merger, consolidation, conversion, transfer, domestication or continuance to be effected pursuant to § 251 (other than a merger effected pursuant to § 251(g) of this title), § 252, § 254, § 255, § 256, § 257, § 258, § 263, § 264, § 266 or § 390 of [the DGCL].").

21

other corporate events,"[93] in *de facto* mergers not consummated under one of the enumerated DGCL sections,[94] and under other exceptions.[95]  And even when appraisal rights are available, stockholders wishing to exercise that right "must satisfy several conditions, take certain affirmative steps, and avoid certain actions."[96]

Delaware courts have been mindful of Section 262's narrow focus on "the value of the dissenting stockholder's stock."[97]  They have expressly discouraged "inject[ing] into the proceeding a nonvaluation task incompatible with the appraisal purpose,"[98] and emphasized "[t]he design of the statute requires the avoidance of

---

[93] Robert S. Saunders, et al., *Folk on the Delaware General Corporation Law* § 262.02 (7th ed. 2024-1 supp.) (citing *Tanzer v. Int'l Gen. Indus., Inc.*, 402 A.2d 382, 390 (Del. Ch. 1979) (noting "appraisal rights are not available on a sale of assets")).

[94] *Hariton*, 182 A.2d at 25 (refusing to extend appraisal rights under *de facto* merger doctrine to sale of assets effected pursuant to 8 *Del. C.* § 271 because the legislators "grant[ed] the appraisal right only under the merger statutes," not under "the sale of asset statute").

[95] 8 *Del. C.* § 262(b)(1) (Section 262 denies appraisal (i) if the company's shares are publicly listed or widely held such that dissenting stockholders have a "market out" if they oppose the transaction, or (ii) if, in the case of a constituent corporation's stockholders, their vote is not required).  Appraisal rights may be restored in limited circumstances. *See* 8 *Del. C.* § 262(b)(2) (appraisal rights may be restored if the holders are required by the merger to accept cash or any consideration other than (1) shares of the surviving corporation's stock, (2) shares of publicly listed or widely held stock as of the effective date of the merger, or (3) cash in lieu of fractional shares).

[96] Drexler, *supra* note 80, § 36.04 at 36-7.

[97] *Kaye*, 395 A.2d at 375.

[98] *Cavalier Oil Corp. v. Harnett*, 564 A.2d 1137, 1146 (Del. 1989) (affirming the Court of Chancery's decision declining to consider questions "alien to an appraisal action," and emphasizing appraisal's "focus continues to be on the determination of the intrinsic worth of the merged corporation").

complexities in proceedings under it."[99]   In appraisal proceedings, this Court has declined to adjudicate issues beyond those contemplated by Section 262.[100]

By their plain text, Section 220 and Section 262 offer different stockholder rights.  Section 220 provides the exclusive path for stockholders to seek presuit investigatory documents, while Section 262 offers a narrow appraisal remedy in limited circumstances.  Nothing in Section 262's unambiguous language offers a failsafe for stockholders unable to satisfy Section 220.  Reading Section 262 to offer presuit investigatory documents would render Section 220 and its firm standing requirements as surplusage, which this Court should not do.[101]

The ancestors of Section 262 and Section 220 were codified at the same time in 1899 when the original DGCL was enacted.[102]  That DGCL created appraisal

---

[99] *Kaye*, 395 A.2d at 375 (internal quotation marks and citation omitted).

[100] *See, e.g.*, *Union Ill. 1995 Inv. Ltd. P'ship v. Union Fin. Gp., Ltd.*, 847 A.2d 340, 364 (Del. Ch. 2004) (declining to consider in an appraisal action breach of fiduciary duty claims because the relief sought "is beyond the proper scope of this [appraisal] action," emphasizing "[a]ppraisal actions must be confined to the issues contemplated by § 262"); *Gentile v. SinglePoint Fin., Inc.*, 2003 WL 1240504, at *5 (Del. Ch. Mar. 5, 2003) (concluding the appraisal petitioners' share dilution claim "is not within the scope of this appraisal action"); *Cavalier Oil Corp. v. Harnett*, 1988 WL 15816, at *6 (Del. Ch. Feb. 22, 1988), *aff'd*, 564 A.2d 1137 (Del. 1989) (refusing to consider "claim of equitable entitlement" because it "would have no bearing on the 'fair value' of the corporations or their stock").

[101] *Taylor v. Diamond State Port. Corp.*, 14 A.3d 536, 368 (Del. 2011) (explaining that statutory interpretation requires the Court to "ascribe a purpose to the General Assembly's use of statutory language, construing it against surplusage, if reasonably possible").

[102] *Klein v. Sunbeam Corp.*, 95 A.2d 460, 461 (Del. 1953) ("[I]n 1899, the General Assembly enacted the first General Corporation Law.").

23

rights in one section and codified stockholders' common law right to inspect the stock ledger and stocklist in another.[103]  When statutes are passed "as a whole," "each part or section should be read in light of every other part or section to produce a harmonious whole."[104]  That the DGCL's appraisal statute and inspection statute were passed together supports the conclusion they were meant to perform different functions and codify different rights.

The common law inspection right for "corporate books and records" was codified into Section 220 in 1967 as "part of comprehensive revisions to the Delaware General Corporation Law."[105]  Section 220 also "shift[ed] the jurisdiction to compel inspections from [the] Superior Court to the Court of Chancery."[106]  Those

---

[103] 21 Del. Laws ch. 273, § 56 (1899) ("[A]ny stockholder in either corporation consolidating as aforesaid, who objected thereto in writing, shall within twenty days after the agreement of consolidation has been filed and recorded, as aforesaid, demand in writing from the consolidated corporation payment of his stock[.]"); *id.*, § 17 ("[I]t shall be the duty of the officer who shall have charge of the stock ledger to prepare and make, at least ten days before every election, a complete list of stockholders entitled to vote, arranged in alphabetical order.  Such list shall be open at the place where said election is to be held for said ten days, to the examination of any stockholder, and shall be produced and kept at the time and place of election during the whole time thereof, and subject to the inspection of any stockholder who may be present.").

[104] *Spencer v. Goodill*, 17 A.3d 552, 555 (Del. 2011).

[105] S. Mark Hurd & Lisa Whittaker, *Books and Records Demands and Litigation: Recent Trends and Their Implications for Corporate Governance*, 9 DEL. L. REV. 1, 2 (2006); *see also* 56 Del. Laws ch. 50 § 220 (1967) (codified at 8 *Del. C.* § 220 (1967)) ("Any stockholder . . . shall, upon written demand . . . have the right . . . to inspect for any proper purpose the corporation's stock ledger, a list of its stockholders, and its other books and records . . . "); *Mite Corp. v. Heli-Coil Corp.*, 256 A.2d 855, 858 n.1 (Del. Ch. 1969).

[106] Drexler, *supra* note 80, § 27.01 at 27-2.

24

1967 amendments, and those thereafter, presumably accounted for the existing statutes and any changes occurred after the original statute's passage.[107] If Section 262's legislative remedy had also offered stockholders inspection rights, the 1967 version of Section 220 would have been an unnecessary addition to the DGCL.

As for *Zoox*, I do not read it to offer inspection rights under Section 262 at all, much less for stockholders who failed to satisfy Section 220's "mandatory statutory procedural standing requirements."[108] I read it as an example of this Court's exercise of its broad discretion to limit the scope of discovery in an appraisal proceeding, which appeared to have been brought for presuit investigation purposes, where a stockholder had satisfied Section 220's form and manner requirements but the merger's closing effectively excused the company from responding.[109]

In *Zoox*, common stockholders of Zoox, Inc., a private Delaware corporation acquired by Amazon.com, demanded appraisal of their Zoox shares under Section 262 and then sought Section 220 inspection after the transaction was announced.[110]

---

[107] *Brown*, 195 A.2d at 383 (explaining when "the statute in question was re-enacted . . . it is presumed that the Legislature considered any changes . . . which had occurred subsequent to the passage of the original statute"); *see also DiSabatino v. State*, 808 A.2d 1216, 1227 (Del. Super. Ct. 2002) ("When the General Assembly amends a prior statutory enactment by materially changing the language, rules of statutory construction create a presumption that a change in the meaning of the statute was intended." (citing *Daniel D. Rappa, Inc. v. Engelhardt*, 256 A.2d 744 (Del. 1969))), *aff'd*, 810 A.2d 349 (Del. 2002).

[108] *Cent. Laborers*, 45 A.3d at 141.

[109] *Zoox*, 268 A.3d at 1222–23.

[110] *Id.* at 1210–11.

The petitioners' inspection demands undisputedly complied with Section 220's form and manner requirements.[111] The transaction closed before the company's five-business-day response period expired, so the petitioners lost the ability to enforce their inspection demands.[112]

The petitioners then filed a Section 262 appraisal action and sought plenary discovery.[113] The company moved for a protective order, contending that the discovery requests were disproportionate and were for the purpose of investigating future breach of fiduciary duty claims.[114] The court rejected the proportionality argument as a bar to plenary discovery in appraisal proceedings,[115] but exercised its discretion to limit discovery to what the petitioners "would have received in a Section 220 action where they are foreclosed from pursuing a Section 220 action through no fault of their own."[116]

*Zoox*'s conclusion to allow only Section 220-style discovery does not disregard Section 220's form and manner requirements. *Zoox* acknowledged those requirements, recognized Section 220 may be "imperfect tool[s] for investigating

---

[111] *Id.* at 1211–12.

[112] *Id.* at 1211.

[113] *Id.*

[114] *Id.* at 1210, 1216.

[115] *Id.* at 1213–16.

[116] *Id.* at 1222–23.

26

acquisitions of private companies,"[117] and narrowed appraisal discovery to accommodate the "unusual facts in th[at] case."[118] *Zoox* does not support Barkan's attempt to bypass Section 220's statutory standing requirements.

Nor does *Zoox* diminish or excuse the DGCL's inspection requirements for private companies, as Barkan contends.[119] Barkan argues private company stockholders should have more leeway when seeking inspection because they have less information than public company stockholders.[120] That is not the law. "The General Corporation Law . . . (Sections 101 through 398) . . . govern the creation and structuring of all private corporations organized under the laws of Delaware."[121] Indeed, because stockholders of private companies "do not receive the mandated, periodic disclosures associated with a publicly held corporation," this Court has specifically encouraged "minority shareholders in a privately held corporation" to

---

[117] *Id.* at 1218–19 (recognizing that "Section 220 presents timing challenges unique to the M&A context" because transactions may close before the stockholder could file an inspection action and noting that "[t]he stockholder-standing requirement and the five-day rule make Section 220 an imperfect tool for investigating acquisitions of private companies" because "nothing prohibits private companies from agreeing to close on a shorter timeline").

[118] *Id.* at 1223; *see also id.* at 1223 n.83 (emphasizing "[t]he facts of this case are unusual" and ordering discovery limited to "no more information . . . than what [petitioners] would be entitled to through a Section 220 proceeding").

[119] *Cf.* 262 Action, D.I. 10 at 11–14.

[120] *Id.* at 12–13 (relying on *Zoox* and contending that "the private company stockholders [should be] permitted to seek books and records through an appraisal proceeding to investigate potential breach of fiduciary duty claims").

[121] Drexler, *supra* note 80, § 4.01 at 4-1.

utilize Section 220 "to inspect the corporation's books and records."[122]  This Court has frequently adjudicated inspection rights disputes concerning private companies and has never exempted private company stockholders from the statutory standing requirements for inspection.[123]   Even the *Zoox* petitioners still made undisputedly compliant premerger Section 220 demands.[124]

Far from endorsing Section 262 as a *de facto* alternative route to presuit investigatory documents, *Zoox* cautions against expanding Section 262 appraisal proceedings on two well-reasoned grounds.  First, it notes Section 220's growth eliminated the historic policy considerations that supported the use of appraisal

---

[122] *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 685 A.2d 702, 713 (Del. Ch. 1995) (recognizing stockholders of private companies "have a legitimate need to inspect the corporation's books and records to value their investment, in order to decide whether to buy additional shares, sell their shares, or take some other action to protect their investment"), *aff'd*, 681 A.2d 1026 (Del. 1996).

[123] *See, e.g.*, *Thomas & Betts Corp. v. Leviton Mfg. Co.*, 681 A.2d 1026, 1028 (Del. 1996) (stockholder seeking inspection of "a closely held Delaware corporation"); *Peneff Hldgs. LLC v. Nurture Life, Inc.*, 2024 WL 3964006, at *1 (Del. Ch. Aug. 28, 2024) (noting the defendant "is a privately held Delaware corporation"), *report and recommendation adopted*, (Del. Ch. 2024); *Floreani v. FloSports, Inc.*, 2024 WL 1520182, at *1 (Del. Ch. Apr. 9, 2024) (resolving the "books and records dispute that involves a private Delaware entity, owned by family members"); *PVH Polymath Venture Hldgs. Ltd. v. TAG Fintech, Inc.*, 2024 WL 371084, at *1 (Del. Ch. Jan. 31, 2024) (noting the company "is a privately held Delaware corporation"); *Myers v. Acad. Sec., Inc.*, 2023 WL 4782948, at *2 (Del. Ch. July 27, 2023) (same), *report and recommendation adopted*, (Del. Ch. 2023); *Sutherland v. Sutherland*, 2010 WL 1838968, at *1 (Del. Ch. May 3, 2010); *Senetas Corp., Ltd. v. DeepRadiology Corp.*, 2019 WL 3430481, at *1 (Del. Ch. July 30, 2019), *report and recommendation adopted*, (Del. Ch. 2019); *Woods Tr. of Avery L. Woods Tr. v. Sahara Enter., Inc.*, 238 A.3d 879, 886 (Del. Ch. 2020) (seeking inspection of "a privately held investment fund").

[124] *Zoox*, 268 A.3d at 1210.

28

discovery to bring a plenary fraud claim.[125]    Second, it reiterates that recent legislative and judicial developments have aimed to restrict, not expand, Section 262 proceedings.[126]    As both themes refute Barkan's arguments, I will take up each in turn.

### (a)    The Modern Recognition Of Section 220 Counsels Against Appraisal As An Information-Gathering Tool.

*Zoox* examined Section 262's limited historical use for information gathering as grounded in the Delaware Supreme Court's 1988 landmark decision *Cede & Co. v. Technicolor, Inc.* and concluded that historical use was extinct.[127]    In *Cede*, the Supreme Court allowed appraisal petitioners to use information uncovered in their bona fide appraisal proceeding to bring and prosecute newly discovered breach of fiduciary duty claims,[128] rejecting the argument that the appraisal petitioners lacked standing to assert those claims.  The Delaware Supreme Court observed that after a merger, minority shareholders would split into two camps:  "the great majority of minority shareholders" would accept merger consideration and not seek appraisal, whereas the few appraisal-seeking stockholders might uncover information potentially supportive of a fraud action.[129]    Those appraisal petitioners would have

---

[125] *Id.* at 1221.

[126] *Id.* at 1221–22.

[127] 542 A.2d 1182 (Del. 1988).

[128] *Id.* at 1188.

[129] *Id.* at 1188–89.

29

no "financial incentive to communicate their discovered claim" to those stockholders who accepted merger consideration and thus preserved standing to sue.[130] So barring the appraisal petitioners "from asserting a later-discovered fraud claim may effectively immunize a controlling shareholder" from fraud claims.[131] *Cede* concluded those "policy considerations militate[d] against foreclosing a shareholder electing appraisal rights from later bringing a fraud action based on after-discovered wrongdoing in the merger."[132]

As important context, *Cede* was decided at a time when, according to empirical studies, stockholders made "little use" of Section 220 "as an information-gathering tool."[133] The resulting "plethora of superficial complaints" prompted the Delaware Supreme Court in 1993 to incentivize derivative plaintiffs to utilize Section 220[134]—the "tools at hand."[135] Doctrinal developments since *Cede* have

---

[130] *Id.* at 1189.

[131] *Id.*

[132] *Id.* at 1188.

[133] *Rales v. Blasband*, 634 A.2d 927, 935 n.10 (Del. 1993); *see also* James D. Cox et al., *The Paradox of Delaware's "Tools at Hand" Doctrine: An Empirical Investigation*, 75 BUS. LAW. 2123, 2145 (2020) (observing that from 1981 through 1994, "stocklist cases (ninety-one) were significantly more common than books and records filings (fifty-three)"). Those observed numbers do not capture the full use of Section 220 because "many shareholder demands for documents do not lead to litigation." *Id.* at 2144 n.113.

[134] *Rales*, 634 A.2d at 935 n.10.

[135] *Grimes v. Donald*, 673 A.2d 1207, 1216 n.11 (Del. 1996) (coining the phrase "tools at hand"), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del. 2000); *see also AmerisourceBergen Corp. v. Lebanon Cty. Empls.' Ret. Fund*, 243 A.3d 417, 426, 426

meaningfully curtailed indiscriminate merger suits,[136] and Section 220 has "gained greater significance."[137]

Zoox concluded Section 220's growth has "eliminate[d] key policy concerns motivating the rule of *Cede*."[138]  *Zoox* observed that the recognition of Section 220's role gives appraisal a "less pronounced" role as an "information-gathering" support for subsequent fiduciary litigation.[139]   *Cede*'s permission to use information unearthed during a bona fide appraisal proceeding to bring a subsequent fraud action is not a blanket license to convert appraisal into a standalone presuit investigatory tool, as Barkan now argues.  To the contrary, *Cede* reaffirmed the limited nature of appraisal proceedings, emphasizing that appraisal "is a limited legislative remedy" and "the only relief available is a judgment . . . for the fair value of the dissenters'

---

n.33 (Del. 2020) (observing that "[f]or over a quarter-century, this Court has repeatedly encouraged stockholders" to use Section 220).

[136] *See generally* Matthew D. Cain et. al., *The Shifting Tides of Merger Litigation*, 71 VAND. L. REV. 603, 610 (2018) (showing that by 2013, "[v]irtually all deals are challenged through litigation—with the rate of such challenges in deals over $100 million hovering between 94% and 96%" and "most large mergers are challenged in multiple lawsuits filed in different courts"); Cox, *supra* note 133, at 2126–27 (observing *Corwin*, *MFW,* and *Trulia* decisions between 2014 and 2016 were likely substantive tools developed "to address the tsunami of deal litigation" (citing *Corwin v. KKR Fin. Hldgs. LLC*, 125 A.3d 304 (Del. 2015); *Kahn v. M & F Worldwide Corp.*, 88 A.3d 635 (Del. 2014), *overruled in part by Flood v. Synutra Int'l, Inc.*, 195 A.3d 754 (Del. 2018); *In re Trulia, Inc. S'holder Litig.*, 129 A.3d 884 (Del. Ch. 2016))).

[137] *Zoox*, 268 A.3d at 1217.

[138] *Id.* at 1222.

[139] *Id.* at 1221.

shares."[140]  *Cede* warned against "impermissibly broaden[ing] the legislative remedy" by including other claims in "a statutory appraisal action."[141]

### (b)  Legislative and Judicial Developments Limit Appraisal.

*Zoox* also echoed Delaware's recent legislative and judicial aim "to restrict appraisal, not expand it."[142]  In 2016, the General Assembly "amended Section 262 in two ways to limit its attraction."[143]  A trio of Delaware Supreme Court decisions from 2017 to 2019 "further reduced the allure of appraisal claims."[144]  *Zoox* expressly noted "turning appraisal into a type of presuit investigation would be

---

[140] *Cede*, 542 A.2d at 1186–87 (citing *Weinberger*, 457 A.2d at 712–13); *see also id.* at 1187 ("[I]n a section 262 appraisal action the only litigable issue is the determination of the value of the appraisal petitioners' shares on the date of the merger, the only party defendant is the surviving corporation and the only relief available is a judgment against the surviving corporation for the fair value of the dissenters' shares.").

[141] *Id.* at 1189.  Subsequent decisions recognized that "[i]t is settled law that a breach of fiduciary duty claim arising from the merger . . . must be brought as a separate action directly challenging the merger."  *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 1994 WL 198726, at *3 (Del. Ch. May 16, 1994) (collecting cases); *see also Gentile*, 2003 WL 1240504, at *4 (concluding "the Share Dilution Claim is not within the scope of this appraisal action").  In limited circumstances, when "there is no distinction in identity between those plaintiffs seeking appraisal and those raising equitable claims," this Court has permitted plaintiffs to amend their petition to assert additional equitable claims to serve "judicial and litigative efficiency."  *Nagy v. Bistricer*, 770 A.2d 43, 58–59 (Del. Ch. 2000); *see also Harris v. Harris FRC Corp.*, 2021 WL 57021, at *3 (Del. Ch. Jan. 7, 2021) (permitting a petitioner "leave to amend his petition in this case to assert plenary claims in addition to his appraisal claim" (citing *Nagy*, 770 A.2d at 58)).

[142] *Zoox*, 268 A.3d at 1221.

[143] *Id.*

[144] *Id.* at 1221–22 (citing *Verition P'rs Master Fund Ltd. v. Aruba Networks, Inc.*, 210 A.3d 128 (Del. 2019); *DFC Glob. Corp. v. Muirfield Value P'rs, L.P.*, 172 A.3d 346 (Del. 2017); *Dell, Inc. v. Magnetar Glob. Event Driven Master Fund Ltd.*, 177 A.3d 1 (Del. 2017)).

an additional step" and warned against "permit[ting] stockholders full discovery in an appraisal proceeding where their goal is to investigate wrongdoing."[145] Allowing Barkan to inspect the Company's books and records through an appraisal petition would contradict those legislative and judicial developments.

Doing so would also stretch *Zoox*'s narrow application to "the unusual facts" in that case.[146] The petitioners there brought appraisal proceedings because their Section 220 path was blocked "through no fault of their own."[147] The same cannot be said here: Barkan did not serve an inspection demand to initiate a Section 220 path. He could have done so; and he did not deny that he could. Barkan's counsel represented another common stockholder seeking inspection, and was aware the Merger was expected to close imminently.[148] Barkan next argued that it would be "disingenuous" to require him to "serve a 220 demand knowing that there was not enough time to actually utilize the Section 220 process."[149] But Section 220 allows no exemption from its form and manner requirements.

At bottom, *Zoox* reflects this Court's discretionary power to limit the scope of discovery in an appraisal action. It does not authorize using Section 262 as an

---

[145] *Zoox*, 268 A.3d at 1221.

[146] *Id.* at 1223.

[147] *Id.* at 1222.

[148] 220 Action, D.I. 1 Ex. C.

[149] 262 Action, D.I. 10 at 14 n.46.

alternate, freestanding path to obtaining Section 220 materials. Doing so here where Barkan never served an inspection demand would eviscerate Section 220's statutory standing and jurisdictional requirements.[150] Barkan's failure to serve a demand is statutorily fatal to his standing to seek inspection under the DGCL's only means to do so.

Barkan lacks standing to pursue documents under Section 220, and brings his Section 262 Petition solely as a "substitution" for Section 220 inspection, when Section 262 offers no such thing.[151] Exabeam's motion to dismiss is granted.

## B. Barkan's Motion To Intervene And Stay Is Denied.

Barkan moved to intervene in the Plenary Action under Court of Chancery Rule 24(b) for the limited purpose of staying those proceedings until Barkan

---

[150] It would also eliminate Section 220's requirement that stockholders demonstrate a credible basis to suspect wrongdoing, and other limitations on what documents a stockholder can obtain. *See, e.g.*, *Sec. First Corp. v. U.S. Die Casting & Dev. Co.*, 687 A.2d 563, 567 (Del. 1997) (requiring stockholders to show a "credible basis by a preponderance of the evidence"); *Seinfeld*, 909 A.2d at 121 (limiting documents to what are "necessary and essential"); *Lebanon Cty. Empls.' Ret. Fund v. Amerisourcebergen Corp.*, 2020 WL 132752, at *24 (Del. Ch. Jan. 13, 2020) (limiting inspection to formal board materials absent a need), *aff'd*, 243 A.3d 417 (Del. 2020); 8 *Del. C.* § 220(f) (2025) (explaining this Court "may order the corporation to produce additional records of the corporation" if the corporation "does not have any of the [enumerated formal board] books and records"). An appraisal petition typically is not subject to a pretrial dispositive motion challenge, and appraisal petitioners generally are afforded broad, "liberalize[d]" discovery. Drexler, *supra* note 80, § 36.06 at 36-17 ("Apart from the determination of entitlement to appraisal, litigation under Section 262 resembles general litigation."); *Cede*, 542 A.2d at 1186 (determining "fair value" may use a "broaden[ed] or liberalize[d]" approach); *see also* 8 *Del. C.* § 262(h) (appraisal determination should take into account "all relevant factors").

[151] Pet. ¶ 23.

completes his purported presuit investigation.[152]  The plenary plaintiffs objected.[153]

Rule 24(b) allows permissive intervention "at the Court's discretion."[154]  Such intervention may be permitted upon timely application (1) when a state statute "confers a conditional right to intervene"; or (2) when an applicant's "claim or defense [] shares with the main action a common question of law or fact."[155]  The Court may deny intervention when it "will unduly delay or prejudice the adjudication of the rights of the original parties."[156]

Barkan seeks intervention to stay the Plenary Action so that he can complete his presuit inspection and hopefully augment the pleading in the Plenary Action, thereby avoiding the consequences from dismissal of a lesser complaint in the Plenary Action.[157]  But Barkan has no standing to complete a presuit inspection.  He has no claim to press that is not already represented in the Plenary Action.[158]  In my

---

[152] Plenary Action, D.I. 17 ¶¶ 4–5, 20.

[153] *Id.* at D.I. 22.  The Plenary Plaintiffs agreed that "that there are no available means by which Exabeam stockholders can conduct a pre-suit books-and-records investigation." *Id.* ¶ 11.

[154] Ct. Ch. R. 24(b); *In re AMC Ent. Hldgs., Inc. S'holder Litig.*, 2023 WL 2518479, at *5 (Del. Ch. Mar. 15, 2023) ("[P]ermissive intervention is available at the Court's discretion[.]").

[155] Ct. Ch. R. 24(b).

[156] *Id.*

[157] Plenary Action, D.I. 17 ¶¶ 4, 17–20.

[158] *Shipley v. Shipley*, 1991 WL 189000, at *2 (Del. Ch. Sept. 3, 1991) (denying permissive intervention where the proposed intervenor had no "legitimate interest . . . shown to be threatened by this litigation").

discretion, I deny Barkan's motion to intervene.

## III. CONCLUSION

For reasons stated above, Exabeam's motion to dismiss is GRANTED. Barkan's motion to intervene and stay the Plenary Action is DENIED.